UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRICK FARQUHARSON, #538192,

 Petitioner,

                                            CASE NO. 2:17-CV-10901
v.                                          HONORABLE ARTHUR J. TARNOW

CONNIE HORTON,[1]

 Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I.    Introduction

       This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner

Kerrick Farquharson ("Petitioner") was convicted of second-degree murder, Mich. Comp.

Laws § 750.317, assault with intent to commit murder, Mich. Comp. Laws § 750.83, and

possession of a firearm during the commission of a felony ("felony firearm"), Mich.

Comp. Laws § 750.227b, following a jury trial in the Genesee County Circuit Court.  He

was sentenced to 37 years 6 months to 75 years imprisonment on the murder conviction, a

concurrent term of 23 years 9 months to 50 years imprisonment on the assault conviction,

and a consecutive term of 2 years imprisonment on the felony firearm conviction in 2009.

_____

       [1]Petitioner is currently confined at the Chippewa Correctional Facility in Kincheloe,
Michigan where Connie Horton is the warden.  Accordingly, the case caption is hereby amended
to reflect his current custodian.  *See* 28 U.S.C. § 2243; 28 U.S.C. foll. § 2254, Rule 2(a); Fed. R.
Civ. P. 81(a)(2).

In his petition, he raises claims concerning the effectiveness of trial and appellate counsel, the admission of certain evidence, the jury instructions and verdict form, and his right to a speedy trial. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.      Facts and Procedural History

Petitioner's convictions arise from a shooting outside of a Flint nightclub in 2005 that resulted in the death of one man and an injury to his sister. The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant's convictions arise from a shooting outside a nightclub in Flint during the early morning hours of January 30, 2005. David Colen was fatally shot and his sister, Denise Colen, was shot in the face, leaving her permanently blind. The evidence showed that defendant went to the nightclub with Otis Dickerson and George Smith, but waited in a car outside the club because he was not old enough to enter. Dickerson and David Colen became involved in a fight inside the club, and several other persons joined the fight and began attacking Colen. After the fight broke up, David and Denise Colen left the nightclub, and Dickerson and Smith also left. The Colens passed Dickerson's car while walking to their own car. According to Dickerson, Smith, and another witness, Delon Savage, defendant jumped out of Dickerson's car and shot both David and Denise Colen as they attempted to get into their car.

> Two witnesses, Andre Mathis and Tyrone Savage, died before trial. Mathis was fatally shot on December 29, 2005, and Savage was shot on January 2, 2007. In May 2006, the trial court granted defendant's pretrial motion to

admit Mathis's prior testimony, given pursuant to an investigative subpoena, in which Mathis had identified Dickerson as the shooter. The prosecution appealed that decision. This Court held that Mathis's prior testimony was admissible under MRE 804(b)(10), provided the prosecution had a similar motive to develop Mathis's testimony at the investigative-subpoena hearing. *People v. Farquharson*, 274 Mich.App. 268, 278-279, 731 N.W.2d 797 (2007), *lv den* 478 Mich. 931, 732 N.W.2d 901 (2007). This Court declined to address defendant's argument that his constitutional right to present a defense would be violated if he were precluded from presenting Mathis's prior testimony because the prosecution had not raised that issue and defendant had not filed a cross appeal. *Id*. at 279, 731 N.W.2d 797. This Court remanded the case for further proceedings consistent with its opinion. *Id*.

On remand, in January 2008, the trial court determined that the prosecution did not have the same motive to develop Mathis's testimony during the investigative-subpoena hearing, but ruled that the prior testimony was admissible to protect defendant's constitutional right to present a defense. The prosecution filed another application for leave to appeal, this time arguing that the trial court improperly exceeded the scope of this Court's prior remand order by admitting Mathis's prior testimony on the basis of defendant's constitutional argument. After this Court denied the application, *People v. Farquharson*, unpublished order of the Court of Appeals, entered January 30, 2008 (Docket No. 283300), the prosecution moved to adjourn the trial to enable it to pursue an application for leave to appeal with the Supreme Court. The trial court denied the motion to adjourn, following which the prosecution dismissed all charges and filed an application for leave to appeal with the Supreme Court. On March 24, 2008, the Supreme Court dismissed the application "[b]ecause the application sought to appeal a ruling made in connection with charges that have since been dismissed by the prosecutor." *People v. Farquharson*, unpublished order of the Michigan Supreme Court, entered March 24, 2008 (Docket No. 135744).

Defendant was re-arraigned on October 13, 2008. Two weeks later, the prosecution filed a complaint for superintending control in this Court, seeking to reverse the trial court's January 2008, order admitting Mathis's prior investigative subpoena testimony. This Court denied the complaint on November 14, 2008, "due to the fact that plaintiff has other adequate legal

remedies available." *In re Farquharson*, unpublished order of the Court of
appeals, entered November 14, 2008 (Docket No. 288558), *lv den* 483
Mich. 901, 761 N.W.2d 97 (2009). Trial thereafter began in December
2008. Mathis's prior investigative-subpoena testimony was introduced at
defendant's trial.[1] The jury found defendant guilty of second-degree murder,
assault with intent to commit murder, and felony-firearm.

*People v. Farquharson*, No. 290765, 2010 WL 4628648, *1-2 (Mich. Ct. App. Nov. 16,

2010) (unpublished) (footnote in original).

      Following his convictions and sentencing, Petitioner filed an appeal of right with

the Michigan Court of Appeals raising claims concerning the admission of drug activity

evidence, the admission of Otis Dickerson's testimony about being shot at 10 times due to

the case, Delone Savage's testimony that his brother Tyrone was killed by Raymond

McClure, and George Smith's testimony that Petitioner has assaulted someone, the trial

court's refusal to suppress a letter seized from Petitioner's jail cell, his right to a speedy

trial, the effectiveness of trial counsel, and the scoring of the sentencing guidelines.  The

court denied relief on those claims and affirmed his convictions and sentences.  *Id.* at pp.

2-8.  Petitioner then filed an application for leave to appeal with the Michigan Supreme

Court, which was denied in a standard order.  *People v. Farquharson*, 490 Mich. 896, 804

N.W.2d 556 (2011).

---

    [1]The trial court also permitted the prosecutor to introduce a statement that Mathis made in
connection with a later guilty plea in an unrelated case. In that statement, Mathis indicated that
Dickerson was not the shooter at the nightclub shooting.

Petitioner subsequently filed a motion for relief from judgment and a motion for an evidentiary hearing with the trial court raising claims concerning the effectiveness of appellate counsel relative to his speedy trial claim, the effectiveness of trial counsel in refusing his demands to accept a plea offer and the effectiveness of appellate counsel in failing to move for an evidentiary hearing on this issue, the effectiveness of appellate counsel for failing to pursue a juror coercion claim, the jury instructions were coercive and deviated from the standard verdict form, and the effectiveness of trial counsel in presenting a defense. The court granted an evidentiary ("*Ginther*") hearing on the plea offer issue, but denied relief on the other claims pursuant to Michigan Court Rule 6.508(D)(3), and further ruled that Petitioner failed to show that defense counsel was ineffective. *People v. Farquharson*, No. 08-23682-FC (Genesee Co. Cir. Ct. March 9, 2015 Opin.). The trial court then conducted the evidentiary hearing on the plea offer issue, found that the defense attorneys' version of events as to the plea offer were more credible than Petitioner's version, and denied relief on the merits of the claim. *Id*. (June 24, 2015 Opin.). The court also denied reconsideration. *Id*. (July 20, 2015 Opin.). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied because he "failed to establish that the trial court erred in denying his motion for relief from judgment." *People v. Farquharson*, No. 330646 (Mich. Ct. App. April 28, 2016). Petitioner filed an application for leave to appeal with

the Michigan Supreme Court, which was denied because he "failed to meet the burden of

establishing entitlement to relief under MCR 6.508(D)." *People v. Farquharson*, 500

Mich. 933, 889 N.W.2d 499 (2017).

Petitioner thereafter filed his federal habeas petition, raising the following claims:

I.  He was denied his right to effective assistance of counsel
    when counsel failed to object to inflammatory drug evidence
    that was prejudicial and irrelevant to the charges, which
    deprived him of his right to a fair trial.

II. He was denied his right to a fair trial based on inflammatory
    evidence that was seized.

III. He was denied his right to effective assistance of counsel
     when counsel failed to inform him on the deadline to accept a
     guilty plea.

IV. He was denied his right to a fair trial when the trial court's
    verbal instructions to the jury were improper because they
    directed the jury to find him guilty of at least second-degree
    murder and those instructions were reinforced by a
    constitutionally defective verdict form.

V.  He was denied effective assistance of appellate counsel on
    direct appeal when counsel failed to raise improper jury
    instructions and flawed verdict form.

VI. He was deprived of his right to a speedy trial.

VII. He was denied his right to effective assistance of counsel
     when counsel failed to request a speedy trial.

Respondent has filed an answer to the petition contending that it should be denied

because certain claims are barred by procedural default and all of the claims lack merit.

6

Petitioner has filed replies to that answer.

## III.    Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of

petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529

U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find

a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations

omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential

standard for evaluating state-court rulings,' and 'demands that state-court decisions be

given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*,

521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562

U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The

Supreme Court emphasized "that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade,* 538 U.S.

63, 75 (2003)).  A habeas court "must determine what arguments or theories supported or

. . . could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  Thus, in

order to obtain federal habeas relief, a state prisoner must show that the state court's

rejection of a claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal

judges "are required to afford state courts due respect by overturning their decisions only

when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _

U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is

within the "realm of possibility" that fairminded jurists could find the state court decision

to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to deciding whether the state

court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412;

*see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme

Court "has held on numerous occasions that it is not 'an unreasonable application of

clearly established Federal law' for a state court to decline to apply a specific legal rule

that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552

U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d)

"does not require a state court to give reasons before its decision can be deemed to have

been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. It also "does not require

citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. _, 132 S. Ct. 2148, 2155 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, _, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**IV.    Analysis**

10

### A.    Procedural Default

As an initial matter, Respondent argues that several of Petitioner's habeas claims are barred by procedural default because he did not properly raise the issues in the state courts and/or first raised them on state collateral review and the state courts denied relief based upon Michigan Court Rule 6.508(D).  On habeas review, however, federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  Such is the case here.  The procedural issues are somewhat complex and intertwined with the substantive claims, and the substantive claims are more readily decided on the merits.  Accordingly, the Court need not address the procedural default issue and shall proceed to the merits of Petitioner's claims.

### B.    Merits

#### 1.    Admission of Drug Evidence & Effectiveness of Trial Counsel

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting evidence that drugs were seized from Petitioner's and Dickerson's

residence and that trial counsel was ineffective for failing to object to the admission of that drug evidence.

A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate due process and warrant habeas relief. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a

showing that counsel made errors so serious that he or she was not functioning as counsel

as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the

petitioner must establish that counsel's deficient performance prejudiced the defense.

Counsel's errors must have been so serious that they deprived the petitioner of a fair trial

or appeal. *Id.*

      To satisfy the performance prong, a petitioner must identify acts that were "outside

the wide range of professionally competent assistance." *Id.* at 690. The reviewing

court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a

strong presumption that trial counsel rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The

petitioner bears the burden of overcoming the presumption that the challenged actions

were sound trial strategy.

      As to the prejudice prong, a petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A reasonable probability is one that is sufficient

to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the [proceeding] cannot

be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals considered the underlying evidentiary issue and the effectiveness of counsel issue on direct appeal and denied relief on those claims. The court explained in relevant part:

> Dickerson was originally charged with offenses arising from both the nightclub shooting and his drug trafficking. He was permitted to plead guilty to reduced charges of maintaining a drug house and accessory after the fact in relation to the nightclub shooting (for destroying both defendant's clothing and the gun that defendant allegedly used to shoot the victims), in exchange for his agreement to provide truthful testimony against defendant. Thus, evidence of Dickerson's drug activity was relevant to Dickerson's plea, which in turn was relevant to his credibility and motive to give false testimony against defendant. A witness's credibility is "an appropriate subject for the jury's consideration," and evidence of a "witness's bias or interest in a case is highly relevant to credibility." *People v. Coleman*, 210 Mich. App. 1, 8, 532 N.W.2d 885 (1995).

Furthermore, evidence of Dickerson's and defendant's joint participation in drug trafficking activities was relevant to establish the nature of their relationship. Defendant's relationship with Dickerson was relevant to defendant's motive for shooting someone who had been involved in an altercation with Dickerson, but had not been involved in any dispute with defendant. Their relationship was also relevant to explain Dickerson's motives for destroying evidence, and for previously giving conflicting statements about the shooting.

Further, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The trial court limited the testimony to general evidence that drugs were found in the home. It precluded specific testimony concerning the quantities and locations of the drugs, or specific items listed in the search warrant tabulation, thereby minimizing any prejudicial effect. Defendant also was not prejudiced by the evidence that an automatic rifle was found in the house. Dickerson explained that he acquired the gun for his wife's defense, and the evidence indicated that the gun was not linked to the nightclub shooting.

For these reasons, there was no plain error in the admission of the evidence of drug activity at the home defendant shared with Dickerson.

\* \* \*

We concluded in section II, supra, that the drug activity evidence was relevant and not unduly prejudicial. Thus, defense counsel was not ineffective for failing to object. Counsel was not required to make a meritless objection. *People v. Unger*, 278 Mich. App. 210, 256, 749 N.W.2d 272 (2008). Additionally, defense counsel used the drug evidence to impeach Dickerson's credibility. This was a strategic decision and this Court does not substitute its judgment for that of counsel regarding matters of trial strategy. *People v. Seals*, 285 Mich. App. 1, 21, 776 N.W.2d 314 (2009).

*Farquharson*, 2010 WL 4628648 at \*2-3, 7.

The state court's ruling on the evidentiary claim and the effectiveness of trial

counsel claim is neither contrary to Supreme Court precedent nor an unreasonable

application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred in admitting the drug evidence under Michigan law, he merely alleges a violation of state law which do not justify federal habeas relief. *See, e.g., Bey*, 500 F.3d at 519. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish a constitutional violation as to the admission of the drug evidence. The drug activity evidence was relevant and admissible under state law to explain Petitioner's and Dickerson's relationship, to put the shooting in context, and to explain Dickerson's plea and evaluate his credibility. The trial court's evidentiary ruling, and the Michigan Court of Appeals' affirmation of that ruling, were reasonable. Petitioner fails to show that the admission of the drug activity evidence rendered his trial fundamentally unfair. Habeas relief is not warranted on such a basis.

Third, given the state courts' rulings that the drug activity evidence was relevant and admissible, Petitioner cannot establish that trial counsel erred and/or that he was

prejudiced by trial counsel's conduct in not objecting to the evidence. Counsel cannot be

deemed deficient for failing to make a meritless argument. *See Coley v. Bagley*, 706 F.3d

741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally

unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir.

2000). Moreover, the record reveals that trial counsel relied upon the drug evidence to

contest Dickerson's credibility. Such a tactic was a reasonable trial strategy that will not

be second-guessed on habeas review. Petitioner fails to establish that trial counsel was

ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### 2. Seizure/Admission of Jail Letter

Petitioner also asserts that he is entitled to habeas relief because the trial court

erred in admitting a letter seized from his jail cell. The letter apparently contained racist

comments that Petitioner believes were prejudicial when put before the jury.

As noted, alleged trial court errors in the application of state evidentiary law are

generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67–68;

*Serra*, 4 F.3d at 1354. Only when an evidentiary ruling is "so egregious that it results in a

denial of fundamental fairness" may it violate due process and warrant habeas relief.

*McAdoo*, 365 F.3d at 494 (citing *Estelle*, 502 U.S. at 69-70); *see also Wynne*, 606 F.3d at

871 (citing *Bey*, 500 F.3d at 519-20); *Bugh*, 329 F.3d at 512.

The Michigan Court of Appeals considered this claim on direct appeal and denied

relief.  The court explained in relevant part:

> Defendant also argues that any probative value of the letter was
> substantially outweighed by the danger of unfair prejudice because of the
> racially inflammatory nature of the letter. The letter apparently was offered
> as evidence of defendant's intent to threaten some witnesses who he had
> learned would be testifying at trial. Such evidence is generally admissible
> because it can demonstrate consciousness of guilt. *People v. Sholl*, 453
> Mich. 730, 740, 556 N.W.2d 851 (1996). Here, however, the letter does not
> identify the intended recipient and the alleged threats are vague, thereby
> diminishing its probative value. The portion of the letter that was read into
> the record consists more of an angry rant, peppered with racial epithets.
> Under the circumstances, we believe that any probative value was
> outweighed by its prejudicial effect. However, there is no reasonable basis
> for believing that the letter affected defendant's substantial rights, i.e., that it
> affected the outcome of the trial. Rather, the outcome of the trial depended
> mainly on whether the jury believed the testimony of Dickerson, Smith, and
> Delon Savage. The letter had no affect on their credibility. Therefore, any
> error does not require reversal.

*Farquharson*, 2010 WL 4628648 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  First, to the extent that Petitioner

asserts that the trial court erred in admitting the letter under Michigan law, he merely

alleges a violation of state law which do not justify federal habeas relief.  *See Bey*, 500

F.3d at 519.  State courts are the final arbiters of state law and the federal courts will not

intervene in such matters.  *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also*

*Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish that the admission of the letter rendered his trial fundamentally unfair. Accepting that the trial court erred in admitting the letter under state evidentiary law, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). In this case, the testimony from Dickerson, Smith, and Savage identifying Petitioner as the shooter was significant and the case turned on the jury's determinations of their credibility. Given such circumstances, and in the context of Petitioner's lengthy trial of which the letter was a small part, it cannot be said that the admission of the letter had a substantial and injurious effect or influence on the jury's verdict at trial. At a minimum, the Michigan Court of Appeals' decision to that effect is reasonable.

Lastly, the Court notes that Petitioner is not entitled to habeas relief on any claim that the confiscation of the letter from his jail cell violated his Fourth Amendment rights.

Petitioner had a full and fair opportunity to present an illegal search and seizure claim in

the state courts (and did so) such that any Fourth Amendment claim is precluded on

habeas review. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976) (ruling that federal

courts will not address a Fourth Amendment claim upon habeas review if the petitioner

had a full and fair opportunity to litigate the claim in state court and the presentation of

the claim was not thwarted by any failure of the state's corrective processes). Habeas

relief is not warranted on this claim.

### 3. Effectiveness of Trial and Appellate Counsel - Plea Offer

Petitioner next asserts that he is entitled to habeas relief because trial counsel was

ineffective for failing to inform him of the deadline for a plea offer made by the

prosecutor and appellate counsel was ineffective for failing to raise the issue on direct

appeal.

Petitioner first raised the plea offer issue on collateral review in the state courts.

The trial court conducted an evidentiary hearing on the issue and then denied relief on the

merits of the claim. The trial court summarized the evidentiary hearing testimony, which

is presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner*, 581 F.3d at

413, as follows:

> At the hearing, the Court heard testimony from Defendant and both his trial
> attorneys, Anthony Pappadakis and Dennis Snyder.

20

Defendant testified at the Ginther hearing. Defendant testified that on a Friday when jury selection in his case began, his attorneys conveyed a plea offer to a second degree murder count with manslaughter guidelines with a minimum maximum of 15 years imprisonment. Defendant told his attorneys he wanted to think about it and discuss it with his family. Defendant testified he spoke to his family on Friday when he was back at jail, and his family told his attorneys he wanted to take a plea. Defendant further testified when he came back to court following the weekend, he told his attorneys he wanted to take the plea. Defendant testified that although he told his lawyers daily that he wanted to take a plea, they kept telling him to wait and they could get a better plea after they cross-examined his co-defendants in trial. After his attorneys cross-examined Defendant's co-defendants, Defendant asked Attorney Snyder to get him a plea. Attorney Snyder spoke to Assistant Prosecuting Attorney Karen Hanson and Attorney Snyder told Defendant the plea was no longer on the table. Defendant testified he was never informed there was a deadline for the plea.

As Defendant understood the plea, his attorneys conveyed a manslaughter plea to him and told him the guidelines. Defendant thought the offer was 10 to 15 years. Defendant understood the maximum sentence to be 15 years. Defendant also testified his attorneys told him they could possibly get him a deal on a charge of great bodily harm less than murder and no guidelines were discussed about that. Defendant also testified the plea offer was to second degree murder, with manslaughter guidelines, with a fifteen year minimum and no top of the guidelines. Defendant testified he did not understand the plea until he later received a letter from Attorney Snyder. Defendant supplemented the record by providing the letter to the Court. Defendant also  testified his recollection was a 15 year maximum. Defendant testified if the offer was a minimum of 15 years with a maximum determined by the judge, he would have pleaded to it. He also told his attorneys he wanted to take a plea regardless of what it was - he just knew it was something about manslaughter. Defendant was clear his attorneys offer was only available until Denise Colon testified. Defendant testified exactly tell his attorneys what he wanted, only that he wanted to take a plea.

Attorney Pappadakis testified he spoke with Defendant and his family while Attorney Snyder negotiated with Assistant Prosecuting Attorney Karen Hanson. The offer made to Defendant prior to trial, which was available

until Denise Colon testified, was a plea to second degree murder with a maximum minimum manslaughter cap of 15 years. There was no guarantee or offer on the maximum the Court could sentence if Defendant took the plea. Defendant .understood the maximum could be anything and the only thing defense could guarantee was the minimum. Defense counsel was trying to get the prosecution to agree to a maximum sentence of 22.5 years to provide protection to Defendant if he took the plea. The prosecution would not agree to a maximum cap.

Attorney Pappadakis specifically remembers they told Defendant of the plea deadline while they were discussing plea negotiations and again prior to Colon testifying. Defendant indicated he was not willing to take a plea because there was no protection afforded to him on the maximum sentence he could receive. Defendant never told counsel he wanted to take a deal. Before Denise Colon testified, defense counsel told Defendant the offer was only good until Colon testified. After Colon testified, Defendant asked if he could get the deal. Defendant's attorneys explained APA Hanson said the deal would no longer be available, but Attorney Snyder was going to try and get a plea offer.

Attorney Pappadakis testified he never refused to convey Defendant's acceptance of an offer to the prosecutor. Defendant refused to take any offer until it got close to trial. Defense counsel never told Defendant the offer would improve during the trial. The only time Attorney Pappadakis remembered Defendant asked about the plea offer was after Colon testified. Attorney Pappadakis was adamant Defendant did not tell him he wanted to take a deal every day before Colon's testimony.

Attorney Snyder testified he was the lead counsel. Just prior to jury selection, the prosecution indicated they would be willing to resolve the case if Defendant pleaded to second degree murder with a manslaughter cap on the minimum sentence of 15 years. They did not discuss a maximum sentence at that time. That was the first offer the prosecution made to the defense. Great bodily harm was never a possible offer discussed with the prosecutor or with Defendant. The prosecutor's offer was conveyed to Defendant before jury selection. Defendant's counsel told him there was no protection on the maximum·and he was looking at 15 years to whatever the judge wanted to sentence him. Defendant agreed if he could get protection

on the maximum, he would consider taking a plea. They discussed a possible maximum of 22.5 years and Defendant authorized Attorney Snyder to relay a counter-offer to the prosecutor for 15 to 22.5 years. The prosecutor rejected Defendant's counter offer. APA Hanson could not agree to a maximum sentence. APA Hanson and Attorney Snyder spoke to the judge about it and the judge was only inclined to commit to a maximum sentence of 22.5 years if the prosecution recommended it. APA Hanson indicated she would oppose that maximum. Attorney Snyder explained the offer to Defendant again and Defendant did not want to take it. Attorney Snyder conveyed Defendant's rejection of the offer to the prosecutor, and the prosecutor was going to leave the offer open until Colon testified. APA Hanson stated once Colon started to testify, all offers were off the table. Attorney Snyder relayed this information to Defendant.

Only after Colon testified, Defendant told Attorney Snyder he wanted to the deal. Attorney Snyder told Defendant he did not think the deal was available, but he would talk to APA Hanson about it. Attorney Snyder tried to get an offer from APA Hanson. APA Hanson checked with her boss and confirmed all deals were off since Colon started to testify.

Attorney Snyder never refused to convey Defendant's acceptance of a plea offer to the prosecution. Attorney Snyder further testified, "If Defendant would have accepted a plea offer, [Attorney Snyder] would have been very pleased to put it in operation and avoid a trial." Attorney Snyder never told Defendant the plea offer would get better. Defendant did not tell Attorney Snyder he wanted to take a plea every morning. Attorney Snyder never told Defendant the prosecution would make a more generous plea offer once Defendant's co-defendants testified. Attorney Snyder testified he conveyed to Defendant once Colon testifies, all deals are off. Before Colon was sworn, Attorney Snyder leaned over to Defendant and reiterated that once Colon testified, all deals are off. Defendant did not want to accept a deal. Toward the end, Defendant leaned over toward Snyder and stated he wanted a deal. Before Colon testified, Defendant did not want to take any deal that was offered.

*Farquharson*, No. 08-23682-FC, June 24, 2015 Opin. at pp. 2-4.

As previously discussed, the Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel at trial. To establish that counsel was ineffective, a habeas petitioner must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012). A criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In order for a defendant to establish that he or she was prejudiced by an un-communicated plea offer, the defendant must prove that the plea offer would have been presented to the court, *i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id*. at 164.

Additionally, the right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner ordinarily must demonstrate that appellate counsel's performance was deficient

and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. It

is well-established, however, that a criminal defendant does not have a constitutional right

to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*,

463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose
> on appointed counsel a duty to raise every "colorable" claim suggested by a
> client would disserve the … goal of vigorous and effective advocacy ….
> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel." *United States v. Perry*,

908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is

the "process of 'winnowing out weaker arguments on appeal and focusing on' those more

likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at

751-52). "Generally, only when ignored issues are clearly stronger than those presented

will the presumption of effective assistance of appellate counsel be overcome." *Monzo v.*

*Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

The state trial court denied relief on this claim finding that Petitioner's evidentiary

hearing testimony concerning the plea offer conflicted with his defense counsels'

testimony and that counsels' testimony was more credible than Petitioner's testimony.

The court also found that Petitioner did not seek to accept a plea in the case until after

Colon testified, at which point all plea offers were revoked by the prosecutor.  Applying

the *Strickland* standard, the court went on to conclude that it was not persuaded that

Petitioner was denied the effective assistance of counsel at trial or on appeal as he failed

to show that trial counsel's or appellate counsel's performances were deficient.

*Farquharson*, No. 08-23682-FC, June 24, 2015 Opin. at p. 4.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  As discussed by the trial court,

Petitioner and his trial attorneys gave conflicting testimony about whether Petitioner was

informed of the plea offer and whether he expressed a desire to accept the plea offer while

it was available.  The attorneys essentially testified that Petitioner was informed of the

plea offer, including the deadline for accepting it, that he did not want to accept the plea

offer due to the lack of maximum sentence limit, and that he did not indicate a desire to

accept the actual plea offer until after that offer had expired.  The trial court found the

attorneys' version of events more credible and concluded that Petitioner failed to show

that trial counsel performed deficiently.  The trial court's factual findings and credibility

determinations are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1), and

Petitioner fails to rebut those presumptions with clear and convincing evidence.  *See*

*Warren*, 161 F.3d at 360-61.

Moreover, the trial court's decision was reasonable. As the Sixth Circuit has explained in the context of a direct appeal, "'[f]aced with starkly different views of the facts, either one of which has ample evidence to support it, 'the factfinder's choice between them cannot be clearly erroneous.'" *Christopher v. United States*, 831 F.3d 737, 739 (6th Cir. 2016) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). "In he-said, he-said cases like this one, that means the factfinder does not clearly err in picking one 'he' over the other so long as there is support for each account." *Id.* Such is the case here. The trial court reasonably determined, based upon the evidentiary hearing testimony, that Petitioner was informed of the plea offer, including its deadline, and that Petitioner did not indicate a willingness to accept that plea offer until after it had expired. Given such facts, the trial court reasonably concluded that trial counsel was not deficient during the plea negotiations and that appellate counsel was not deficient on direct appeal. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner fails to show that either trial counsel or appellate counsel was ineffective with respect to the plea offer issue. Habeas relief is not warranted on this claim.

### 4. Jury Instructions & Verdict Form

Petitioner also asserts that he is entitled to habeas relief because the trial court's verbal jury instructions were improper because they directed the jury to find him guilty of second-degree murder and those instructions were re-enforced by a defective jury verdict form.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72; *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

Petitioner first raised this claim on collateral review in the state courts and the trial court denied relief finding, in part, that the claim lacked merit. The court found that the verdict form was distinguishable from the improper form in *People v. Wade*, 283 Mich. App. 462, 465-66 (2009), that the verdict form complied with Mich. Crim. J. Inst. 3.26, and that both the jury instructions and the verdict form were consistent with state law. *Farquharson*, No. 08-23682-FC, March 9, 2015 Opin. at p. 4.

First, to the extent that Petitioner asserts that the trial court erred in instructing the jury under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief. *See, e.g., Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief"). As discussed, state courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish that the trial court's verbal jury instructions or the jury verdict form rendered his trial fundamentally unfair. The trial court instructed the jury on the presumption of innocence and the burden of proof, *see* 12/23/08 Trial Tr., Vol. XI, p. 9, inform the jury of the elements of the charged offenses and the lesser offenses, *id.* at pp. 26-31, and instructed the jury to consider each offense separately and

that they could find Petitioner guilty of the charged offense, guilty of the lesser offense, or not guilty, *id.* at pp. 31-33. The verdict form reflected the same (although in a different order per defense counsel's request), *id.* at pp 38-40; Pet. Exh. 1. The record thus reveals that the jury instructions and the verdict form sufficiently notified the jury of the charges and the possible verdicts and did not direct the jury to reach any particular result. Petitioner fails to show that the jury instructions or the verdict form were improper or that they rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### 5. Effectiveness of Appellate Counsel - Jury Instructions & Form

Petitioner relatedly asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the improper jury instructions and faulty verdict form issue on direct appeal.

As discussed, the right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts*, 469 U.S. at 396. To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. A criminal defendant, however, does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones*, 463 U.S. at 751. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional

judgment of counsel." *Perry*, 908 F.2d at 59. In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith*, 477 U.S. at 536 (quoting *Jones*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo*, 281 F.3d at 579.

Petitioner first raised this claim on collateral review in the state courts and the trial court denied relief stating that it was not persuaded that Petitioner was denied the effective assistance of counsel on appeal. The court found that Petitioner "made no showing" that appellate counsel was unreasonably deficient, as required by *Strickland*, for not raising this issue on direct appeal. *Farquharson*, No. 08-23682-FC, March 9, 2015 Opin. at p. 4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the trial court's ruling that both the verbal jury instructions and the jury verdict form were proper, Petitioner cannot establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct with regard to such matters. As noted, appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *Shaneberger*, 615 F.3d at 452 (citing *Greer*, 264 F.3d at 676). Habeas relief is not warranted on this claim.

**6.    Speedy Trial**

Petitioner also asserts that he is entitled to habeas relief because he was denied his right to a speedy trial due to a more than 3 ½ year delay in bringing him to trial after his arrest in this case.

The Sixth Amendment to the United States Constitution provides a criminal defendant with the constitutional right to a speedy trial. U.S. Const. amend. VI. To determine whether a speedy trial violation has occurred, a reviewing court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative; rather a court must weigh the factors and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id*. at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (citations omitted). That being said, the length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Thus, to trigger a speedy trial analysis, a defendant must allege that the interval between accusation and trial has crossed the line between ordinary delay and presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

Courts have generally found delays of one year or more to be "presumptively

prejudicial." *Id*. at 652, n .1.

The Michigan Court of Appeals considered this claim on direct appeal, applied the

*Barker* factors, and denied relief. The court explained in pertinent part:

> With regard to the first factor, there was a delay of more than 3-1/2 years
> between the date of defendant's initial arrest and his trial. Thus, the delay is
> presumptively prejudicial and triggers inquiry into the other factors.
>
> As for the second factor, both parties were responsible for some of the
> delay. Defendant was responsible for some of the delay through his own
> motions for adjournment of trial. We agree with defendant, however, that
> most of the delay was caused by the prosecutor's repeated efforts to appeal
> the trial court's decisions admitting Mathis's investigative subpoena
> testimony. The prosecutor's first appeal successfully led to the trial court's
> initial order being vacated and the case remanded for further proceedings to
> determine the admissibility of Mathis's prior testimony. However, none of
> the prosecutor's subsequent appellate efforts were successful. Moreover, we
> disagree with the prosecutor's argument that its second appeal and its
> complaint for superintending control were justified because the trial court
> violated this Court's mandate in the first appeal when it admitted Mathis's
> investigative subpoena testimony on constitutional grounds, despite finding
> that the prosecutor lacked sufficient motive for cross-examination at the
> investigative-subpoena hearing.
>
> This Court's decision in *Farquharso*n, 274 Mich. App. 268, 731 N.W.2d
> 797, was limited to the specific question of admissibility raised in the
> prosecutor's initial application. This Court expressly left open the question
> whether Mathis's testimony might be admissible under other constitutional
> grounds. *Id*. at 279, 731 N.W.2d 797. The prosecutor's contention that the
> trial court was somehow barred from considering that issue on remand was
> unjustified. Further, after the prosecutor unreasonably filed its second
> interlocutory application for leave and this Court denied the application, the
> prosecutor voluntarily dismissed the charges, yet filed an application for
> leave to appeal with the Supreme Court. The Supreme Court never

reviewed the matter because the prosecutor had voluntarily dismissed the charges. When the prosecutor refiled the charges, it then improvidently filed a complaint for superintending control with this Court for the purpose of again challenging the trial court's decision admitting Mathis's prior testimony. Both the prosecution's second interlocutory appeal and its complaint for superintending control were unjustified and unreasonably delayed bringing defendant's case to trial. Thus, the second factor weighs in defendant's favor.

With respect to the third factor, defendant asserted his right to a speedy trial in the Supreme Court during plaintiff's appeals, but did not do so in the circuit court. This factor weighs against defendant.

Regarding the fourth factor, prejudice, because the prosecution's serial appeals resulted in a delay of more than 18 months, it has the burden of showing that defendant was not prejudiced by the delay. *Williams*, 475 Mich. at 262, 716 N.W.2d 208. Two types of prejudice arise from delay in the commencement of trial-prejudice to the defendant's person, and prejudice to the defense. *Id*. at 264, 716 N.W.2d 208. Prejudice to the person arises when the defendant is incarcerated pending trial. *Gilmore*, 222 Mich. App. at 462, 564 N.W.2d 158. Prejudice to the defense is the more serious deprivation, "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Williams*, 475 Mich. at 262, 716 N.W.2d 208 (citations omitted). General allegations of prejudice to the defense from fading witness memories and financial burdens is insufficient. *Gilmore*, 222 Mich. App. at 462, 564 N.W.2d 158.

Defendant argues that he was prejudiced because two witnesses, Mathis and Tyrone Savage, died before trial. However, defendant received the benefit of Mathis's prior exculpatory testimony at trial. There is no indication of how Tyrone would have testified. More significantly, Mathis died before any of the delay caused by the prosecution. Indeed, defendant moved for an adjournment of trial at least twice after Mathis was shot. Similarly, Tyrone Savage was killed on January 2, 2007, while the prosecutor's initial appeal of the trial court's evidentiary ruling was pending. Thus, both witnesses died before the prosecution filed any of its leave applications with the Supreme Court, and before the later proceedings that led to the prosecution's interlocutory application for leave to appeal the trial court's decision on

remand, the dismissal of the case without prejudice and the refiling of the charges, and the complaint for superintending control. Therefore, any prejudice resulting from the witnesses' deaths was not caused by the subsequent delays by the prosecution. Defendant's lengthy incarceration constituted prejudice to his person, but if a defendant does not suffer prejudice to his defense, he may be incarcerated for longer than 19 months and not suffer prejudice to his person. *Williams*, 475 Mich. at 264, 716 N.W.2d 208. Accordingly, under the circumstances, the prosecution has satisfactorily established that defendant was not prejudiced by the delay.

Although the issue is a close one, after balancing the four factors, we are unable to conclude that defendant was denied his right to speedy trial.

*Farquharson*, 2010 WL 4628648 at *6-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Michigan Court of Appeals conducted a reasonable analysis of the four *Barker* factors. The first factor, the length of the delay, was greater than 18 months, so it is presumptively prejudicial and requires consideration of the other factors. An analysis of the other factors, however, fails to show that Petitioner suffered a speedy trial violation. The second factor, the reason for the delay, weighs in Petitioner's favor because while some of the delay was attributable to Petitioner's motions for adjournment, most of the extended delay arose from the prosecution's secondary, unwarranted round of appeals. The third factor, the assertion of the right to a speedy trial, weighs in the prosecution's favor because Petitioner did not assert his right to a speedy trial in the state trial court. The fourth factor, prejudice, weighs in the prosecution's favor because Petitioner's defense was not prejudiced by the

delay attributable to the prosecution. The two witnesses, Andre Mathis and Tyrone

Savage, who were unavailable at trial died before the delays caused by the prosecution

occurred. Petitioner moved for two adjournments after Mathis was shot and Savage was

killed while the prosecution's initial, justifiable appeal was pending in the state courts.

Consequently, the prosecution is not liable for any prejudice to the defense case arising

from those witnesses' deaths. Thus, while the speedy trial issue is "a close one," the

Court concludes that the Michigan Court of Appeals' decision that no speedy trial

violation occurred is reasonable. Habeas relief is not warranted on this claim.

### 7.      Effectiveness of Trial Counsel - Speedy Trial

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel

was ineffective for failing to request a speedy trial before the trial court.

Again, as previously discussed, the Sixth Amendment guarantees a criminal

defendant the right to the effective assistance of counsel at trial. To establish that counsel

was ineffective, a habeas petitioner must prove that counsel's performance was deficient

and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at

687. The reviewing court's scrutiny of counsel's performance is highly deferential and

there is a strong presumption that trial counsel exercised reasonable professional

judgment. *Id.* at 689-90; *see also Harrington*, 562 U.S. at 105. A habeas petitioner is

only entitled to relief if he or she can show that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Additionally, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained:

> We concluded in section V, *supra*, that, despite the significant delay, defendant was not prejudiced by the delay and, therefore, his right to a speedy trial was not violated. Thus, we are unable to conclude that there is a reasonable probability that defendant would have prevailed on a speedy trial claim had the issue been presented to the trial court. Therefore, this ineffective assistance of counsel claim cannot succeed.

*Farquharson*, 2010 WL 4628648 at *8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' determination that Petitioner's speedy trial rights were not violated, particularly with regard to the lack of evidence showing that the delay attributable to the prosecution prejudiced his defense, Petitioner cannot establish that trial counsel erred and/or that he was prejudice by counsel's conduct. As noted, trial counsel cannot be deemed ineffective for failing to make a meritless argument. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Habeas relief is not warranted on this claim.

**V.      Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  The Court will grant the certificate of appealability. Petitioner is also granted leave to proceed in forma pauperis on appeal.  *See* Fed. R. App. P. 24(a).

Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court also **GRANTS** a certificate of appealability and **GRANTS** Petitioner leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.

s/Arthur J. Tarnow_____
ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE

Dated:  January 13, 2020